REYNALDO G. GARZA,
Circuit Judge, specially concurring:
I concur with the result reached by the majority in this matter. Messer’s retaliation claim was properly dismissed, but the magistrate judge erred in dismissing Messer’s discrimination claims. Therefore, this case is reversed and remanded in part and affirmed in part. However, I have certain reservations about the decision of the majority, and write separately to express those concerns.
Our fellow Circuit Judge, Judge Jacques Wiener, reminded us in his concurrence in Hopwood v. State of Texas that “we should only decide the case before us, and should do so on the narrowest possible basis.” Hopwood v. State of Texas, 78 F.3d 932, 962 (5th Cir.1996) (Wiener, J. concurring), cert. denied, — U.S. -, 116 S.Ct. 2581, 135 *141 L.Ed.2d 1095 (1996). The majority is attempting to prove a bit too much in this case, with its rather sweeping dicta regarding the constitutionality and standards of review for affirmative action policies. In doing so, it appears to me that the majority is attempting to quietly expand Hopwood’s empire into the realm of employment law with this decision, a move which is both hasty and unnecessary, given that the main issue is simply whether there is enough of a dispute of fact and law in this matter so as to preclude summary judgment. I am not persuaded that Supreme Court precedent or the precedent of this Circuit requires as sharp an assault on state affirmative action employment policies as the majority implies, nor do I see a particular need to add yet another burden to those who are trying to manage workplaces in this Circuit.
The majority appropriately cites Wygant, Croson, and Adarand as the three leading Supreme Court eases on this subject. Wygant v. Jackson Bd. of Educ., 476 U.S. 267, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986); City of Richmond v. J.A. Croson Co., 488 U.S. 469, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989); Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995). As these cases point out, the racial classifications imposed by government must be reviewed under strict scrutiny, such classifications “must serve a compelling government interest, and must be narrowly tailored to further that interest.” Adarand, 515 U.S. at 227, 235, 115 S.Ct. at 2112-13, 2116-17. Racial classifications whose sole purpose is the creation or maintenance of diversity do not pass muster under this standard. Id. at 228, 115 S.Ct. at 2113. Similarly, affirmative action programs whose sole or primary purpose is the creation of minority “role models” do not pass muster under this standard. Wygant, 476 U.S. at 275, 106 S.Ct. at 1847-48. However, this strict scrutiny does not abolish all race-based distinctions, and such distinctions are acceptable if necessary to further a compelling interest, and if the “narrow tailoring” test is satisfied. Adarand, 515 U.S. at 237, 115 S.Ct. at 2117. As Justice O’Connor stated, strict scrutiny is not “strict in theory, but fatal in fact.” Id. Further, it should be noted that this case does not involve strict quotas (or quotas masked as “goals”) as did Adarand and Croson.
Whether or not the TEA’s policies pass muster is a matter to be decided upon remand. However, I fear that the tone of the majority’s decision, coupled with its invocation of Hopwood, will send the message out that affirmative action is, for all intents and purposes, dead in the Fifth Circuit. Such an interpretation would be incorrect under Supreme Court precedent and the precedent of this Circuit, and I write separately to make that point clear.
During the course of our deliberations, I asked my fellow judges on this panel to wait until the Supreme Court made its decision in Piscataway before publishing an opinion in this case. Taxman v. Bd. of Educ. of Township of Piscataway, 91 F.3d 1547 (3d Cir. 1996), cert. granted, — U.S. -, 117 S.Ct. 2506, 138 L.Ed.2d 1010 (1997). My colleagues chose not to do so, and I disagreed with this choice.
Today, as I write this concurrence, the latest news from Washington states that Pis-cataway is going to be settled. This does not change my disagreement with the majority’s choice, in principle. While it is true that the basic facts of Piscataway differed from those of the case at bar, the basic issues were similar, namely, the extent to which, if at all, race and ethnicity may be considered in employment decisions made by the government. When Piscataway was still a live case, I thought my colleagues should have chosen to wait, so this Circuit would not only have had the benefit of the most current views of the Supreme Court on this subject, but we could also have used this case to help chart the post-Piscataway course in this field of law. I believe that this haste was unnecessary (Messer is at a new job, so we need not be concerned that she is suffering at the hands of hostile employers), and indicative of the majority’s desire to move quickly and quietly in expanding Hopwood’s reach. At any rate, recent events make this point moot as a legal matter, but I think it is still worth commenting upon.
There is another issue regarding Supreme Court precedent. In recent years, the Su *142 preme Court has been showing a stronger (and in my view, salutary) respect for states’ rights. The Supreme Court, in decisions such as U.S. v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995),[1] Printz v. U.S., — U.S. -, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997),[2] City of Boerne v. Flores, — U.S. -, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997),[3] and Washington v. Glucksberg, - U.S. -, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997),[4] among others,[5] has shown an increasing willingness to limit the power of the federal government and allow states to set their own rules and regulations on various matters.
This development has coincided with the Supreme Court’s limitations on affirmative action, as exemplified in Wygant, Croson, and Adarand. These two trends, while independent, can conflict with one another. If a state, through the acts of its legislature, chooses to create certain affirmative action policies, the extent to which the federal courts can interpret and scrutinize such policies is both expanded by the recent precedents limiting affirmative action and contracted by the recent precedents limiting the power of the federal government (including the federal courts) from intervening in matters of state governance.
This federalist trend conflicts with an interventionist posture by the federal courts with regard to state affirmative action policies. This conflict has yet to be resolved, and I fear that an overly intrusive approach on our part will only confuse an already murky situation. Indeed, the Supreme Court’s decision to deny certiorari in Coalition for Economic Equity v. Wilson, 110 F.3d 1431 (9th Cir.1996), cert. denied, — U.S. -, 118 S.Ct. 397, 139 L.Ed.2d 310,[6] can be interpreted (to the extent that denials of certiorari can be interpreted) as a recognition that the Supreme Court is reluctant to create a national, “one size fits all” regulation on affirmative action, and is content to leave the details up to the states.
The policies at issue in the case at bar are based on decisions by the legislature, in its findings and regulations regarding the use of affirmative action policies in employment. These regulations, promulgated by a democratically elected legislature, deserve at least some degree of deference and respect.[7] I am concerned that the majority does not seem to give this point much thought in its analysis, and does not give enough respect to actions which were based on the decisions of the legislature. I am of the opinion that *143 unless a state’s actions are forbidden by restrictions in the text of the Constitution or the overwhelming weight of case law, the federal courts should not meddle into the internal affairs of the states. That is one of the main ideas underlying the Tenth Amendment, and the very nature of our federal system.
However, despite my reservations, I CONCUR with the decision of the panel in this case. Karen Messer will have her day in court.

. In Printz, the Supreme Court struck down a section in a federal handgun control law, the Brady Law, which required local law enforcement agencies to perform background checks on gun purchasers. The Supreme Court held this requirement imposed an unconstitutional obligation on state and local law enforcement authorities to execute federal laws.

. In Boeme, the Supreme Court struck down the federal Religious Freedom Restoration Act of 1993, as exceeding Congress’ enforcement powers under § 5 of the Fourteenth Amendment, and constituted an unconstitutional interference with state and local regulations regarding zoning, health and safety, and other police power matters.

. In Glucksberg, the Supreme Court did not create a right to die, but also did not forbid states from passing laws regarding assisted suicide, thereby leaving the issue of the right to die up to the states, unlike the issue of the right to abortion. See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

. Admittedly, the cases cited do not deal with affirmative action, but they are useful in demonstrating the federalist trend in Supreme Court jurisprudence.

. In this case, the Ninth Circuit held that Proposition 209, an anti-affirmative action referendum passed by a majority of the voters in California, did not violate the equal protection clause, and was not preempted by Title VII. The Supreme Court denied certiorari.

. Further, the policies in question, however controversial, certainly do not deserve to be compared to the racial laws of Nazi Germany, as was done in a rather ridiculous paragraph in Mes-ser's brief.